UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
COLLIN KAISER,

                Plaintiffs,                                **REPORT AND**
                                                                **RECOMMENDATION**
      -against-                                         20-CV-05399 (GRB) (JMW)

FAIRFIELD PROPERTIES and SUE KRECKO,

                Defendants.
--------------------------------------------------------------X

**Collin Kaiser**
799 Canal Rd.
Mt. Sinai, NY 11766
*Plaintiff Appearing Pro Se*

**Jennifer E. Sherven**
**Saranicole Alfeche Duaban**
Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797
*For Defendants Fairfield Properties*
*and Sue Krecko*

**WICKS,** Magistrate Judge:

        Plaintiff commenced this action against Defendants Fairfield Properties and Susan Krecko (s/h/a/ Sue Krecko) alleging "civil rights - Housing discrimination" and a violation of 28 U.S.C. § 1983.[1] (DE 8.) He alleges that Defendants denied him housing based upon his status as a Section 8 recipient.[2] (*Id.*) Before the Court on referral from the Honorable Gary R. Brown is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's motion for summary judgment. (DE 30; DE 33.) Plaintiff opposes Defendants' motion to dismiss, and Defendants oppose Plaintiff's motion

---

[1] As further discussed in Section IV. below, the Court interprets *pro se* Plaintiff's "civil rights - Housing discrimination" cause of action as brought pursuant to 42 U.S.C. § 3604 (the Fair Housing Act), 42 U.S.C. § 3617, and New York Human Rights Law pursuant to New York Executive Law § 296.

[2] The Section 8 program, also known as the Housing Choice Voucher program, was created by the Community Development Act of 1978 to provide certain eligible participants with rental subsidies. *See generally* 42 U.S.C. § 1473f.

1

for summary judgment. (DE 30-4; DE 34.) For the reasons that follow, the undersigned respectfully recommends that Defendants' motion to dismiss be granted and Plaintiff's summary judgment motion be denied as moot. However, since this is on referral for a Report and Recommendation, the undersigned considered Plaintiff's motion for summary judgment independently in the event the motion to dismiss is denied. Upon consideration of the motion for summary judgment, it is respectfully recommended that the motion be denied.

## I.    FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint ("Complaint"), including the Civil Cover Sheet and the 157 pages of Exhibits (DE 8), and are presumed to be true for purposes of this Report and Recommendation.[3] Exhibit A consists of 127 pages of screenshots of emails, screenshots of text messages, photos of a shelter in which Plaintiff resided, copies of Social Services forms, printouts of maps, apartment listings, photos of security deposit forms, and a partial copy of an undated complaint to Housing of Urban Development. Exhibit B is a cover page stating that the Exhibit has been re-submitted with Plaintiff's social security number redacted, and consists of Suffolk County Department of Social Services' ("Social Services") response sheet advising Plaintiff that there is no record that he submitted a housing packet, and Exhibit C consists of photos of letters and webpage printouts regarding a credit freeze on various accounts.

On October 13, 2020, Plaintiff advised Social Services that he found permanent housing and needed approval and a rent voucher. (DE 8-2 at 2.) Social Services advised Plaintiff that "max rent is $625 with the shelter supplement. Without shelter supplement is $309.00 per month. We only pay

---

[3] In deciding a motion to dismiss, the Court may consider any document attached to the complaint. *Yanes v. Ocwen Loan Servicing, LLC*, No. 13-CV-2343 (JS)(ARL)., 2015 WL 631962 at *2 (E.D.N.Y. Feb. 12, 2015). A complaint is deemed to include documents that are integral to the complaint, even if not incorporated by reference. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *see also Geldzahler v. N.Y. Medical College*, 663 F. Supp. 2d 379, 389 n.6 (S.D.N.Y. 2009) (considering causes of action listed in Civil Cover Sheet, but which were not alleged in the complaint).

2

month's rent in security." (*Id.*)  On October 18, 2020 and October 20, 2020, Plaintiff received emails from Defendant Krecko, the Leasing Agent at Fairfield Properties, advising him that as part of his application to rent an apartment, he would need a full month's security and a local co-signor "with excellent credit."  (DE 8-1 at 34-35.)  On October 21, 2020, Social Services responded to Plaintiff's request for a guarantee of rent in writing by advising Plaintiff that there was no record that he submitted a housing packet.  (DE 8-2 at 6.)  On October 22, 2020, Plaintiff proceeded to put down a $200 deposit to rent an apartment at Fairfield Terrace in Port Jefferson (DE 8-1 at 20-22.)

      Thereafter, Defendant Krecko and Plaintiff exchanged numerous emails throughout the remainder of October of 2020 regarding Plaintiff's application for the apartment.  (DE 8-1 at 34-86.)  On October 23, 2020, Defendant Krecko again notified Plaintiff that he needed a co-signor.  (DE 8-1 at 51-52.)  Plaintiff advised Defendant Krecko that a co-signor was not an option for him and he really needed to get out of his living situation at the shelter.  (*Id.* at 53.)  Defendant Krecko reiterated that a security deposit would not satisfy the application requirements and a co-signor was needed, and recommended that Plaintiff speak with his case worker for further suggestions as she has seen this issue arise with other applicants.  (*Id.* at 56-57.)  She also advised plaintiff that he could pick up his money.  (*Id.* at 57.)  Plaintiff told Defendant Krecko that his credit was not relevant because he froze his "bureau" and he refused to pick up his deposit.  (*Id.* at 59.)

      Defendant Krecko then advised Plaintiff that she spoke to the corporate office again and that they would reconsider his application if he could explain the debt discharges.  (*Id.* at 62.)  Plaintiff then sent another email to Defendant Krecko, stating that he called the leasing department and was told that his application was canceled.  (*Id.* at 65.)   Defendant Krecko told Plaintiff that his application was canceled because he would not get a co-signor, and because he refused to explain the debt discharges.  (*Id.* at 66.)  She offered to re-submit his application if he could provide a co-signor or explain the discharges, but advised that she was still unsure if Section 8 would pay the $1,940 fee for the apartment.  (*Id.* at 66-67.)  Plaintiff again told Defendant Krecko that his accounts were "frozen" and threated to file complaints against her.  (*Id.* at 70-71.)

3

Defendant Krecko finally told Plaintiff, "This is what my company is asking for. Please send proof that what is coming up on your report is not you. I am not trying to prevent you from renting this apartment. You told us that your credit was frozen, however stuff came up and this is what Corporate is basing your requirements on. Corporate will not finish processing the application without a co-signor. It was looked at again and they saw that you had discharges, and they asked for an explanation." (*Id.* at 72-73.) Thereafter, Plaintiff continued to debate whether the credit report Defendants had was actually his credit report. (*Id.* at 77-86.) The correspondence with Defendant Krecko seemingly ended on October 27, 2020, with Plaintiff requesting to see the credit report that corporate was looking at, and Defendant Krecko advising Plaintiff that there is a form where he can request his own copy. (*Id.* at 79, 82). On October 28, 2021, Social Services responded to Plaintiff's request for one month's rent for security/guarantee of rent in writing and a co-signor, by advising Plaintiff to speak with a case worker about the amount of rent he would be eligible for. (DE 8-2 at 10.)

Plaintiff's Civil Cover Sheet asserts causes of action pursuant to "civil rights – Housing discrimination" and 42 U.S.C. § 1983. (DE 8.) Plaintiff's Complaint alleges that Defendants were "shifty" and deterred Plaintiff from finishing the application process, canceled his application, and made housing unavailable to him because he would be paying through Section 8. (*Id.*) He claims that he has suffered emotional, physical, and financial harm. (*Id.*)

## II.     PROCEDURAL HISTORY

Plaintiff commenced this action by filing his Complaint on November 6, 2020. (DE 1.) On November 19, 2020, Plaintiff filed an Amended Complaint. (DE 8.) The modifications consisted of Plaintiff's request for a bench trial and Exhibits A, B, and C. (DE 8.) Defendants filed a motion for a pre-motion conference for leave to file a motion to dismiss on April 9, 2021. (DE 18.) The Honorable Gary R. Brown waived the pre-motion conference requirement and set a briefing schedule. (Electronic Order dated Apr. 14, 2021.) Defendants filed a motion to dismiss on May 14, 2021, which Judge Brown denied with leave to renew for failure to follow the Court's filing rules. (DE 21-24; Electronic Order

4

dated May 17, 2021.) On May 25, 2021, Plaintiff filed a motion for a pre-motion conference for leave to file a summary judgment motion. (DE 25.). The Court granted Plaintiff's request and set a briefing schedule. (Electronic Order dated June 2, 2021; DE 27.) Defendants' fully briefed motion to dismiss was filed on June 24, 2021 and Plaintiff's fully briefed summary judgment motion was filed on July 28, 2021. (DE 30; De 33.) Judge Brown referred both Motions to the undersigned to issue a Report and Recommendation. (Electronic Orders dated June 2, 2021; June 28, 2021; Nov. 22, 2021).

### III.     LEGAL STANDARD UNDER RULE 12(b)(6)

Defendants move to dismiss Plaintiff's Complaint in its entirety. (DE 30 – DE-30-3.) Defendants argue that source of income, *i.e.*, Section 8, is simply not a protected class under the Fair Housing Act ("FHA"). (DE 30-3.) Defendants further argue that Plaintiff's section 1983 claim should be dismissed because Plaintiff did not, and cannot, assert that he suffered a constitutional injury, and because Defendants were not state actors, nor did Defendants act under the color of state law. (DE 30-3.) Plaintiff opposes, making a blanket statement that his Complaint is precise and compliant with the pleading standards. (DE 30-4.) Plaintiff further argues that failure to state a jurisdictional claim is irrelevant. (*Id.*)

When considering a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The Court uses a two-pronged approach to analyze the sufficiency of the pleadings in which District courts are to first "identify[ ] allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 664. "Though legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

5

to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)). "[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal* at 678 (citing *Twombly* at 555).

Review of a *pro se* plaintiff's complaint carries with it additional considerations. That is, it must be construed broadly and interpreted as raising the strongest arguments. *See McIntyre v. Longwood Cent. School Dist.*, No. 07-CV-1337 (JFB)(ETB), 2008 WL 850263, at *3 (E.D.N.Y. Mar. 27, 2008).[4] When reviewing a motion to dismiss a *pro se* complaint, the Supreme Court instructed long ago that a *pro se* complaint must be held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and therefore may only be dismissed if it is "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 521 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). However, "to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief." *Bey v. La Casse*, 20-CV-9171 (LLS), 2021 WL 1143690, at *1 (S.D.N.Y. Mar. 22, 2021). Even *pro se* complaints must pass muster under the "plausibility" standard. *See Ellis v. City of N.Y. Health & Hosp. Corp.*, 17-cv-6177 (BMC), 2017 WL 5001988, at *1 (E.D.N.Y. Oct. 30, 2017) (citation omitted).

## IV.   DISCUSSION

In construing Plaintiff's Complaint as liberal as feasible, the Court interprets Plaintiff's Complaint to purport to assert causes of action under the FHA pursuant to 42 U.S.C. §§ 3604(a), (b), (d), (f)(1), and/or (f)(2), 42 U.S.C. § 3617, 42 U.S.C. § 1983, and New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 296(5)(a)(1)-(2), (c)(1). Each is considered in turn.

---

[4] Even if the Court went beyond the pleadings and considered the submissions filed in connection with the summary judgment motion, that would not change or affect the recommendations set forth herein. *See* Section V., *infra*.

A. **42 U.S.C. § 3604**

Under the FHA, it is unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Section 3604(b) prohibits discrimination "against any person in terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." *Id.* § 3604(b). Under 42 U.S.C. § 3604(d), it is unlawful "[t]o represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for … rental when such dwelling is in fact so available." *Id.* § 3604(d). It is further unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." *Id.* § 3604(f)(1). And, Section 3604(f)(2) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling … because of a handicap." *Id.* § 3604(f)(2).

Housing discrimination claims under the FHA which do not rest on direct evidence of landlord discrimination, are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021); *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 400 (S.D.N.Y. 2013). Under the *McDonnell Douglas* analysis, a plaintiff establishes a *prima facie* FHA claim by establishing that they (1) are a member of a protected class, (2) suffered an adverse action, and (3) have at least minimal support for the proposition that the housing provider was motivated by discriminatory intent. *Francis*, 992 F.3d 67, 73. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to show a "legitimate, non-discriminatory reason for the challenged decision." *Kennedy v. Related Mgmt.*, No. 08 Civ. 3969(PAC)., 2009 WL 2222530, at *4 (S.D.N.Y. July 23, 2009). If the defendant meets their burden, the burden shifts back to the plaintiff to establish the defendant's reasoning was a pretext for discrimination. *Id.* "The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement." *LeFrak Org., Inc.*, 987 F. Supp. 2d at 401 (internal quotation and citation omitted). To state a claim, the complaint must only include a "short

7

and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 213 (2d Cir. 2008) (finding the complaint sufficient as to plaintiff's FHA claims, where plaintiff stated her protected status, set forth how she was treated differently, and included an allegation that the alleged differential treatment was based on her protected status).

Here, Plaintiff alleges that Defendants discriminated against him because of his status as a Section 8 recipient. (DE 8.) It is beyond peradventure that neither section 8 tenants in and of themselves, nor "source of income," are protected classes enumerated under the FHA. *See* 42 U.S.C. § 3604; *see also Short v. Manhattan Apartments, Inc.*, 916 F. Supp. 2d 375, 392 (S.D.N.Y. 2012) ("None of these provisions [42 U.S.C. §§(d), (f)(1)-(2)] make it unlawful to discriminate on the basis of a person's lawful source of income."); *Lachira v. Sutton*, No. 3:05cv1585 (PCD)., 20017 WL 1346913, at *15 n.15 (D. Conn. May 7, 2007) ("The FHA does not include "source of income" or Section 8 tenants in its list of protected classes.") Plaintiff does not allege that Defendants discriminated against him because of his status in any of the protected classes enumerated under the FHA, namely, race, color, religion, sex, familial status, or national origin and there is nothing in Plaintiff's Complaint that points to him being a member of any of the enumerated protected classes. Because source of income, and specifically Section 8 funding recipients, are not protected classes under the FHA, Plaintiff fails to state that he is in a protected class, and thus, cannot meet the pleading standard required to maintain an FHA claim. Accordingly, the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's FHA claims be granted.

### B. 42 U.S.C. § 3617

Plaintiff alleges that Defendants were "shifty" and deterred him from completing his application. (DE 8.) To the extent that Plaintiff's Complaint may be construed to include a claim pursuant to 42 U.S.C. § 3617, that claim also fails. Under section 3617, it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise of enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605 or 3606 of this title." *Id.* § 3617.

8

Although the Second Circuit has not addressed whether section 3617 can serve as an independent basis for an FHA claim if there is no predicate for liability under sections 3603-3606, district courts in this Circuit have held that a plaintiff may assert such a claim without predicate for liability under those sections. *Birch Fam. Serv., Inc. v. Wlody*, 19-cv-03301 (DLI)(PK), 2021 WL 2312852, at *56 (E.D.N.Y. June 7, 2021); *see also Ohana v. 180 Prospect Place Realty Corp.*, 996 F. Supp. 238, 243 (E.D.N.Y. 1998). To establish a claim under section 3617, a plaintiff must show that they were: (1) a member of a protected class under the FHA, (2) engaged in the exercise or enjoyment of their fair housing rights, (3) defendants were motivated in part by an intent to discriminate, and (4) defendants coerced, threatened, intimidated or interfered with plaintiff on account of their protected activity under the FHA. *Birch*, at *6 (quotation omitted). Plaintiff's Complaint fails to plausibly state a claim pursuant to section 3617 because again, he has not pled his membership in any of the protected classes under the FHA. Thus, the undersigned respectfully recommends that any such claim Plaintiff intended to assert under section 3617, also be dismissed.

### C. 42 U.S.C. § 1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a 'state actor.'" *Bey*, 2021 WL 1143690, at *4 (quoting *West v. Atkins*, 487 U.S. 42, 48-49 (1988)). For purposes of section 1983, private actors may be considered to be acting under the color of state law if they willfully participated in joint activity with the state or its agents or if they conspired with a state actor to violate a plaintiff's constitutional rights. *See Powell v. Lab Corp.*, 17-CV-3632 (JMA)(GRB), 2018 WL 6814371, at *6 (E.D.N.Y. Dec. 27, 2018). For a private actor to qualify as a willful participant in joint activity with the state or its agents, the two must "share some common goal to violate the plaintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014). A plausible § 1983 conspiracy claim must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of

9

that goal causing damages.  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–325 (2d Cir. 200) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).

"[O]ne cannot go into court and claim a 'violation of § 1983'–for § 1983 by itself does not protect anyone against anything."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).  A section 1983 case may be brought pursuant to an alleged violation of an individual's constitutional or federal statutory rights.  *Bose v. City of N.Y.*, No. CV-07-2431(SJF)(SMG)., 2008 WL 564761, at *4 (E.D.N.Y. Feb. 27, 2008) (*adopting Report and Recommendation*).  To bring a section 1983 claim, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law."  *King v. Town of Hempstead*, 161 F.3d 112, 114 (2d Cir. 1998) (citing *Blessing v. Freestone*, 520 U.S. 329, 117 (1997).  Under such a claim, the complaint must clearly identify which federal statute the right to sue upon is based.  *Bose*, 2008 WL 564761, at *3.  To determine whether a statutory provision gives rise to a federal right, the Supreme Court has outlined a three-part test:

> First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

*Bose*, 2008 WL 564761, at *4 (citing *Blessing*, 520 U.S. at 340–41).  If that test is met, meaning Plaintiff demonstrates the federal statute creates an individual right, "there is only a rebuttable presumption that the right is enforceable under § 1983" and dismissal is proper if the statute creates "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."  *Blessing*, at 341 (citations omitted).

Here, the only reference to section 1983 appears on the Civil Cover Sheet to Plaintiff's Complaint (DE 8), but in light of his *pro se* status, the Court construes the section 1983 claim to be based upon alleged violations of a statutory right under 42 U.S.C. §§ 3604 and 3617, the FHA.  The Court does not find it necessary to delve into the three-part test outlined by the Supreme Court, because even if sections 3604 and 3617 give rise to a federal right, Plaintiff cannot state a section 1983 claim under this statute.

10

Since the FHA contains a comprehensive remedial scheme, Plaintiff cannot assert a claim under section 1983 for a deprivation of rights guaranteed by the FHA. *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 334 (E.D.N.Y. 2012) (holding that a plaintiff cannot assert claims under section 1983 for a deprivation of rights pursuant to the FHA because that statute contains a comprehensive remedial scheme) (collecting cases); *see also South Middlesex Opportunity Council, Inc. v. Town of Framingham*, No. 07-12018-DPW., 2008 WL 4595369, at *15–16 (D.Mass Sep. 30, 2008) (finding that § 3613 of the FHA is an enforcement mechanism for rights of individuals under §§ 3604 and 3617, and thus "forecloses complementary relief through § 1983.")

Further, Defendants cannot be liable under section 1983 because they are private actors. Plaintiff has not pled any facts alleging concert of action or joint activity between the private Defendants and any state actor. *See Bey*, 2021 WL 1143690, at *4–5 (dismissing *pro se* plaintiff's § 1983 claims for failure to state a claim because plaintiff made no allegation that defendants, private individuals, acted under color of state law); *Calixte v. Susan Ray Equities Inc.*, 21-CV-3623 (RPK) (LB), 2022 WL 118738, at *2 (E.D.N.Y. Jan. 12, 2022) (finding *pro se* plaintiff's § 1983 claim against a landlord who did not transfer a lease into his name, as frivolous because "[n]othing in the complaint indicated that the landlord bore any relationship to the state"). Accordingly, Plaintiff has not alleged a plausible claim under § 1983 and the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's cause of action pursuant to § 1983 be granted.

### D. State Law Claim Pursuant to N.Y. Exec. Law § 296

Under New York Human Rights Law § 296 it is unlawful "[t]o refuse to . . . rent or lease or otherwise deny to or withhold from any person . . . such housing accommodations because of the race, creed, color, disability, national origin, sexual orientation, gender identity or expression, military status, age, sex, marital status, lawful source of income or familial status of such person…" N.Y. Exec. Law § 296(2-a)(a). "The elements of a claim under the NYHRL are the same as under the Fair Housing Act." *Echeverria v. Krystie Manor, LP*, No. CV 07-1369(WDW)., 2009 WL 857629, at *8 (E.D.N.Y. Mar. 30, 2009) (citation omitted). Because the NYHRL encompasses a person's lawful source of income under its

11

protected classes, the Court finds that Plaintiff's Complaint, which alleges discrimination based on his Section 8 status, states a plausible claim under the state statute.

"[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III . . ." *Romero v. Bestcare, Inc.*, CV 15-7397 (JS)(GRB), 2018 WL 1702001, at *8 (E.D.N.Y. Feb. 28, 2018) (citing 28 U.S.C. § 1367) *report and recommendation adopted*, 2018 WL 1701948 (Mar. 31, 2019). Section 1367 is "a doctrine of discretion, not of plaintiff's right." *Davis v. Town of Hempstead*, 14-CV-90 (JMA)(GRB), 2019 WL 235644, at *9 (E.D.N.Y. Jan. 16, 2019) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). In determining whether to exercise discretion to hear state-law claims, courts weigh the values of judicial economy, convenience, fairness, and comity. *See Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657 (2d Cir. 1996). "Once all federal claims have been dismissed, the balance of factors will usually point toward a declination." *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 603 (S.D.N.Y. Mar. 22, 2013) (citation omitted).

If Plaintiff's FHA and § 1983 claims are dismissed, there are no other federal causes of action before this Court. Thus, concerns of judicial economy, convenience, fairness and comity do not weigh in favor of retaining supplemental jurisdiction over the NYHRL claim. *Espinosa v. Nassau Cnty. Corr. Ctr.*, 20-CV-00223 (GRB)(VMS), 2021 WL 826168, at *4 (E.D.N.Y. Mar. 3, 2021); *see also Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d, 198, 221 (E.D.N.Y. 2015) (*adopting Report and Recommendation*) ("Having dismissed all federal causes of action . . . judicial economy, convenience, fairness and comity weigh against retaining supplemental jurisdiction over the remaining state law claims"); *Moscatelli v. Owl's Nest, Inc.*, 19-CV-4255(GRB)(AYS), 2021 WL 3577908, at *6 (E.D.N.Y. Aug. 12, 2021) (holding that judicial economy, convenience, fairness and comity weighed against retaining supplemental jurisdiction over remaining state law claims since federal causes of action were dismissed); *Oka v. Cnty of Suffolk*, No. 11-CV-2578 (SJF)., 2015 WL 918762, at *13 (E.D.N.Y. Mar. 2, 2015) (*adopting Report and Recommendation*) (same). Accordingly, if the undersigned's recommendation for dismissal of Plaintiff's federal causes of action under the FHA and § 1983 is adopted, it is respectfully recommended that

Plaintiff's state law claims under NYHRL be dismissed without prejudice so that Plaintiff may pursue such claims in state court if he so chooses.

### E. Leave to Amend

Pursuant to Rule 15(a), "[t]he court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he Court may *sua sponte* grant leave to amend." *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004). "A pro se plaintiff who brings a civil rights action should be fairly freely afforded an opportunity to amend his complaint, even if he makes the request after the court has entered judgment dismissing his original complaint." *Boddie v. N.Y.S. Div. of Parole*, No. 08-cv-911 (KAM)(LB)., 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009) (internal quotations and citations omitted). Although *pro se* plaintiffs are typically granted leave to amend a deficient complaint, leave to amend may be denied if the amendment would be futile. *Hassan v. U.S. Dept. of Veterans Affs.*, 137 F. App'x 418, 420 (2d Cir. 2005). "A proposed amendment may be deemed futile if the claim would be unable to withstand a Rule 12(b)(6) motion to dismiss." *Bonner v. Bank of N.Y. Mellon*, CV 15-3280 (SJF)(GRB), 2016 WL 1426615, at *7 (E.D.N.Y. Feb. 22, 2016), *Report and Recommendation adopted*, 2016 WL 1238234 (Mar. 28, 2016) (citation omitted).

Plaintiff has not requested leave to amend his complaint, and the Court concludes that to *sua sponte* grant leave to amend under these circumstances would be futile. Here, no conceivable amendment to the existing pleadings could cure the fact that the FHA expressly enumerates the protected classes that the statute encompasses, *i.e.*, race, color, religion, sex, handicap familial status, or national origin. Plaintiff's status as a Section 8 recipient alone is insufficient. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. July 28, 2000) (finding that an amendment would be futile where the problem with *pro se* plaintiff's complaint was substantive and a better pleading could not cure it); s*ee also Palmer v. Fannie Mae*, 14-CV-4083 (JFB)(AYS), 2016 WL 5338542, at *4-5 (E.D.N.Y. Sep. 23, 2016) (*adopting Report and Recommendation in part*) (holding that amendment could not cure defect in *pro se* plaintiff's complaint because plaintiff did not allege she was discriminated against based on her membership in any of the applicable protected classes).

The Court finds that amendment to Plaintiff's § 1983 claim would also be futile since there is no arguable constitutional claim or violation of a federal right based upon the facts presented. *See Cox v. Nassau Cnty. Corr. Ctr.*, 2013 WL 831194, at *3 (E.D.N.Y. Feb. 15, 2013), *Report and Recommendation adopted*, 2013 WL 828949 (Mar. 6, 2013) (dismissing *pro se* plaintiff's § 1983 claim and finding that any amendment would be futile because no reading of the claim suggested anything other than simple negligence). Moreover, Defendants are private actors and there is nothing to suggest that they participated with the state or its agents or conspired with a state actor to violate a plaintiff's constitutional rights. Thus, granting leave to amend would also be futile because state action is lacking. *See Nealy v. Berger*, No. 08-CV-1322 (JFB)(AKT)., 2009 WL 704804, at *11 (E.D.N.Y. Mar. 16, 2009) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983") (alteration in original) (citing *Contes v. City of N.Y.*, No. 99 Civ. 15979SAS), 1999 WL 500140, at *11 (S.D.N.Y. July 14, 1999)).

## V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

If the undersigned's recommendation to grant Defendants' motion to dismiss (DE 30) is adopted, then Plaintiff's motion for summary judgment (DE 33) should concomitantly be denied as be moot. However, if Defendants' motion to dismiss is not granted, it is respectfully recommended that Plaintiff's motion for summary judgment be denied for the reasons set forth below.

### A. Procedural and Factual Background

The Court hereby adopts and incorporates the procedural history and factual background as set forth in Sections I. and II. above. The following additional facts are taken from Plaintiff's motion for summary judgment[5] (DE 33). Plaintiff claims that Defendants refused to fill out Section 8 paperwork because of Plaintiff's credit report. *Id.* Further, Plaintiff argues that Defendants cannot prove there were

---

[5] Plaintiff filed a Rule 56.1 Statement in his motion for a pre-motion conference for leave to file a summary judgment motion. (DE 25.) Plaintiff's actual motion (DE 33) did not include that Rule 56.1 Statement, but set forth the same alleged facts, as well as additional alleged facts.

14

issues with Plaintiff's credit because his credit has been frozen since September 15, 2020, and that Defendants made up the issues with Plaintiff's credit to deter Plaintiff from pursuing the apartment. *Id.* According to Plaintiff, Defendants realized Plaintiff was correct about his credit being frozen, but they canceled his application for the apartment. *Id.* Plaintiff asserts that Defendants tried to have Plaintiff take back his deposit so that it would look like Plaintiff forfeited the apartment. *Id.* Plaintiff claims that he told Social Services about this experience, and Social Services informed him that Defendants were not following protocol by refusing to fill out Section 8 paperwork.[6] Plaintiff declares that this case does not require a trial and that he should be granted summary judgment. *Id.*

Defendants dispute Plaintiff's Rule 56.1 Statement, submit their own Rule 56.1 Statement, and submit affidavits from Defendant Krecko and Mr. David Berger of Fairfield's leasing department. (DE 34-2 – 34-4.) Defendant Krecko, a private individual, is a Leasing Consultant at the Fairfield property located in Port Jefferson. (DE 34-2.) Mr. David Berger, a private individual, is the Director of Leasing and Commercial Property Management at Fairfield Properties, a private company with no affiliation with the government. (DE 34-2; DE 34-3.) Defendant Krecko states that she nor anyone at Fairfield Properties harbors discriminatory animus toward Plaintiff as a Section 8 recipient, and that she has helped Section 8 applicants apply to live in Fairfield Properties' apartments. (DE 34-2.) Defendant Krecko states she tried her hardest to assist Plaintiff in getting his application approved. (*Id.*) It is Defendants' protocol and policy that a potential tenant receiving Section 8 assistance must apply for the apartment first, and once approved, the Fairfield Properties Programs Department will then complete and processes the necessary paperwork. (*Id.*; DE 34-3.) At the time Defendants ran Plaintiff's credit report, they were not aware that Plaintiff would be receiving funds from Section 8 housing because his application did not

---

[6] This factual allegation came from a handheld tape recorder that Plaintiff provided to the Court, containing a purported conversation between Plaintiff and Social Services. Plaintiff did not address whether he provided Defendants with the recording, and the recording has not been authenticated. On a motion for summary judgment, "the district court properly considers only evidence that would be admissible at trial." *Meadows v. Planet Aid, Inc.*, 2011 WL 13299923, at *3 n.6 (E.D.N.Y. July 8, 2011) (quotation and citation omitted). The Court therefore declines to consider this recording as part of Plaintiff's motion.

15

indicate such. (*Id.*) When applicants have a low credit score, the application log will indicate that they need a co-signer or guarantee company to process the application, which is what happened with Plaintiff's application. (*Id.*) Based on the results of Plaintiff's credit check and according to Defendants' policy, Plaintiff was required to provide a co-signor or a guarantor to complete his application. (*Id.*) Krecko repeatedly explained this policy to Plaintiff. (DE 34-2.) Defendants even offered to continue the application process without a co-signor if Plaintiff could give a written explanation for the charge-off on his credit report. (*Id.*) Because Plaintiff was not approved for the apartment by the agency, Defendants could not take further steps with Plaintiff's application. (DE 34-3.) Many residents receive Section 8 funding and funding from similar programs, and Defendants do not discriminate based on recipients of Section 8 funds. (*Id.*; DE 34-2.)

Defendants argue that Plaintiff's motion is premature as no discovery has been done and because they filed a pre-answer motion pursuant to Fed. R. Civ. P. 12(b)(6).[7] (DE 34.) Defendants further argue that there are material issues of fact that preclude summary judgment regarding whether alleged discrimination was the motive for Plaintiff not renting the apartment, and material issues of fact as to whether Plaintiff suffered an adverse action versus failed to complete his own application. (*Id.*) Last, Defendants argue that Plaintiff cannot establish that Defendants are government entities or state actors. (*Id.*)

In Reply, Plaintiff summarizes his calls with Experian regarding a fraud alert placed on his account after he found a credit report in his mailbox that he claims he never requested. (DE 33.) He claims that the fraud alert was placed on his account in December of 2020, which would have made it impossible for Defendants to check his credit. (*Id.* citing Ex. F.) Plaintiff further argues that his summary judgment motion is not premature since Defendants' first motion to dismiss was denied and asserts that discovery is closed.[8] (DE 33) Plaintiff also argues that Defendants must have known he was a Section 8

---

[7] Plaintiff's Reply papers are included in the same document as his summary judgment motion, starting at page 147 of the PDF document.
[8] Defendants' first motion to dismiss was denied without prejudice on *procedural* grounds for failure to comply with Judge Brown's filling rules. (Electronic Order dated May 17, 2021).

recipient when they ran his credit check because Defendant Krecko was made aware of his Section 8 status when he first spoke to her. (*Id.*)

### B. Discussion

Under Rule 56, summary judgment is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Killian*, 680, F.3d 234, 236 (2d Cir. 2012) (citing Fed. R. Civ. P. 56(a)). "In determining whether there are genuine issues of material fact, 'we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003). The movant bears the burden to initially demonstrate that there are no material facts to preclude summary judgment. *Carroll v. Krumpter*, 397 F. Supp. 3d 234, 243 (E.D.N.Y. 2019). If the moving party meets its initial burden, the burden then shifts to the nonmoving party to show that there are specific facts that demonstrate a genuine issue of fact exists. *Id.* (citation omitted). It is "axiomatic that pro se papers be held to less stringent standards than formal pleadings drafted by lawyers." *Brand v. Narco Freedom, Inc.*, 15-CV-5021 (JMA)(GRB), 2020 WL 906681, at *1 (E.D.N.Y. Jan. 8, 2020) (internal quotation and citation omitted). The Courts construe *pro se* briefs to raise the strongest arguments they suggest. *Id.* Nonetheless, a *pro se* is required to follow the requisites of Rule 56.1. *Id.* at 2.

Summary judgment is appropriate only after each party has had an opportunity to develop a factual record by engaging in discovery. *Sanchez v. Nassau Cnty.*, 17-CV-7335 (JFB)(AKT), 2019 WL 2438652, at *4 (E.D.N.Y. Feb. 28, 2019) (*Report and Recommendation* adopted) 2019 WL 1253283, at *2 (E.D.N.Y. Mar. 18, 2019). "The Second Circuit has held that summary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Id.* (citing *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (internal quotation and citation omitted) (emphasis in original).

Here, Plaintiff's motion is entirely premature. Plaintiff misconstrues documents being attached to his Complaint and motion as being formal discovery. In fact, little or no discovery has taken place to date, as Defendants filed a pre-answer motion to dismiss pursuant to Rule 12(b)(6) (DE 30), which was referred to the undersigned (Electronic Order dated May 17, 2021). Thereafter, Plaintiff filed a request for a pre-motion conference for an anticipated motion for summary judgment (DE 25), which was also referred to the undersigned (Electronic Order dated June 2, 2021). The undersigned held a pre-motion conference to set the briefing schedules for the parties' respective motions, and held off on setting a discovery schedule. (DE 27.) Here, without any discovery exchanged to date, there remain numerous factual issues that preclude Plaintiff from establishing he is entitled to summary judgment.

As noted above (*see* section IV.A, *supra*), a plaintiff establishes a *prima facie* FHA claim by showing that they (1) are a member of a protected class, (2) suffered an adverse action, and (3) have at least minimal support for the proposition that the housing provider was motivated by discriminatory intent. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021). First, Plaintiff has not established he was a member of a protected class (*see* § IV.A., above), and therefore he cannot make out a *prima facie* FHA claim.[9] Even if Plaintiff was able to establish that he was a member of a protected class, at this juncture he fails to establish the second and third prongs necessary to a *prima facie* FHA claim. There are blaring issues of fact as to whether Plaintiff suffered an adverse action or whether he did not qualify for the apartment due to his own failure to comply with Defendants' policies and protocols.[10] Similarly, by no means has Plaintiff established that the reason he was not approved for the apartment

---

[9] Even with discovery, this defect is not cured as the FHA does not include Section 8 recipients as a protected class. For the same reasons, Plaintiff also fails to establish he is entitled to summary judgment pursuant to any purported claim under 42 U.S.C. § 3617.

[10] Here, even if the Court considered the inadmissible recording of the Social Services phone call, the outcome would not be altered. Plaintiff fails to mention that the recording also contains audio wherein Social Services repeatedly tells Plaintiff that he needs to speak with a certain individual in another Social Services department about how to complete his application. This begs the question: Does Social Services require a completed apartment application from Defendants before they can advise Plaintiff as to how much monetary assistance he is eligible for (Plaintiff's argument), or do Defendants need to know how much funding Plaintiff is receiving in order to process his apartment application (Defendants' argument)? At this juncture, the Court is left with a "chicken or the egg" conundrum.

was a result of Defendants' discriminatory intent. Plaintiff repeatedly refused to provide a co-signor/guarantor and/or explanation of his debt charge offs, which Defendants assert is their policy and protocol. As it stands, the record reflects that Defendant Krecko was responsive, patient, and informative toward Plaintiff. Plaintiff was given multiple chances to submit the necessary documentation requested, but he refused. There are also unresolved issues regarding the timeline of Plaintiff's purported credit freezes. Simply put, the parties' submissions actually raise more questions than they resolve. Because the elements of a claim pursuant to the NYHRL are the same as those under the FHA, the Court also finds that there are issues of material fact that preclude summary judgment as to Plaintiff's discrimination claim under the NYHRL. *See Echeverria*, 2009 WL 857629, at *8. Thus, the Court respectfully recommends that if Plaintiff's Complaint is not dismissed, then Plaintiff's summary judgment motion be denied without prejudice, and with leave to re-file after the close of discovery.[11]

## VI.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' motion to dismiss be granted as to Plaintiff's FHA claims under §§ 3604 and 3617, and § 1983 claims, and that Plaintiff's claim pursuant to NYHRL be dismissed without prejudice. The undersigned additionally recommends that this dismissal not be accompanied with leave to amend. Alternatively, if the undersigned's recommendation as to Defendants' motion to dismiss is not adopted, then the undersigned further recommends that Plaintiff's motion for summary judgment be denied in its entirety.

## VII.  OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen

---

[11] Plaintiff does not set forth any argument on summary judgment as to his constitutional claims pursuant to § 1983. Nonetheless, for the reasons set forth in § IV.C. above, Plaintiff has undoubtedly failed to eliminate questions of fact as to whether he suffered a constitutional violation or a violation of a federal statutory right, and whether Defendants are state actors.

(14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        February 11, 2022

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge